(28 Misc. Rep. 45.)

ROY WATCH–CASE CO. v. CAMM–ROY WATCH–CASE CO.

(Supreme Court, Special Term, New York County.   June 27, 1899.)

1. TRADE-NAMES—INFRINGEMENT—PECUNIARY INJURY.
   Actual pecuniary injury, resulting from the wrongful appropriation of the trade-name of a company, need not be shown to sustain an action to enjoin the infringement.

2. SAME—WHAT IS AN INFRINGEMENT.
   The name "Camm-Roy Watch-Case Co." is an infringement on the name "Roy Watch-Case Co.," which may be enjoined, regardless of the motive of the offending company.

Action by the Roy Watch-Case Company against the Camm-Roy Watch-Case Company.   Motion to continue pendente lite a temporary injunction.   Granted.

A. Gilhooly, for the motion.

Augustus Van Wyck, opposed.

GILDERSLEEVE, J.   The plaintiff moves to continue pendente lite a temporary injunction restraining the defendant from using the name of Camm-Roy Watch-Case Company.   The motion was made before the defendant's time to answer had expired.   The complaint avers, in substance, that both parties to the action are domestic corporations; that the plaintiff was incorporated on June 18, 1885, and the defendant on May 19, 1899; that the plaintiff, ever since its formation, has carried on, in the city of New York, the business of manufacturing and selling watch cases; that its name has become of great consequence in the good will of its business, its standing, and the reputation of its goods; that, for upwards of 10 years last past, its business has been, and now is, very extensive, and well known in the watch-case trade in this country; that its trade extends over this and 15 other states of the Union; and that there is a large demand for its wares.   It further avers that since the defendant was incorporated it has carried on, in the city of New York, the same kind of business as that of the plaintiff, and has its office and salesroom in the same building occupied by the plaintiff for the past five years; that Auguste X. Roy, one of the incorporators of the defendant, was formerly a stockholder and the president of the plaintiff, and that Frank L. Camm and William F. Macdonough, also incorporators of the defendant, have known of the plaintiff, its products and reputation.   The complaint further charges that, in order to trade upon plaintiff's reputation, deprive it of its rights, and create unfair competition in trade, the defendant has adopted the corporate name of "Camm-Roy Watch-Case Company," and uses it in its business, with the intent that it shall be mistaken for the name of the plaintiff, and that it intends to use it in the transaction of its business; that the similarity of the defendant's name to that of the plaintiff will embarrass and obstruct the business of the plaintiff, cause confusion and mistake, divert the plaintiff's custom, reduce its sales, and deceive the public, to the injury of the plaintiff.   The relief prayed for is that the defendant be enjoined from using the name "Camm-Roy Watch-Case Company," or any other name which includes the name of the

plaintiff, or so nearly resembles it as to induce the belief that the plaintiff and defendant are the same corporation. The complaint is supported by affidavits on the part of the plaintiff. In opposition to the motion, the defendant read a large number of affidavits, from which it appears that the defendant company was formed for the purpose, among others, of acquiring the property, stock, rights, and franchise of the Roy Manufacturing Company, of which four of the incorporators and stockholders were also incorporators and stockholders in the defendant company; that this purpose was effected, and the defendant acquired the right to use the name of Roy Manufacturing Company; that this company had a well-established business in the manufacture and sale of watch cases; that four out of the five stockholders and incorporators of the defendant company swear that the defendant's "name was selected by reason of the association of one Frank L. Camm as incorporator, who had been well and favorably known to the watch-case and jewelry jobbing trade throughout the United States for upwards of 16 years, and of the proposed acquisition of the property, business, and good will of the above-mentioned Roy Manufacturing Company; that it was not chosen with reference to the name of the plaintiff, but was selected with no idea or intention of interfering in any way with the plaintiff or its business reputation, but with perfect good faith." Other evidence was presented tending to show that no confusion of names in the trade or the public mind was likely to ensue from the proposed likeness between the names of the parties to the action, and that no injury would probably accrue to the plaintiff from that cause. The only grounds upon which the plaintiff charges the defendant with a fraudulent intent in assuming its corporate title are the fact that the existence of the plaintiff and of its business was well known to defendant's officers; that for several years the plaintiff and the Roy Manufacturing Company occupied offices in the same building; and that Mr. Roy, now an officer of the defendant, was formerly officially connected with the plaintiff and the Roy Manufacturing Company. As further evidence of a fraudulent intent on the part of the defendant, the plaintiff's counsel points to the fact that the defendant company was formed, in part at least, for the avowed purpose of acquiring the property, franchise, business, and good will of the Roy Manufacturing Company, a concern which for several years had conducted the business of manufacturing and selling watch cases, and he urges that, if this were the real design of the defendant, it would have been best subserved by retaining, with the business of that company, its prestige in the mercantile community. The circumstances savor strongly of a fraudulent design, but the defendant's officers solemnly deny any wrong intent in the selection of the defendant's title.

Without analyzing too closely the moral quality of their motives, we may accept the denial of these gentlemen as evidence that, in choosing the name of the defendant company, they did only what they believed they had the lawful right to do. Assuming the absence of any animating fraudulent purpose on the part of the defendant and of any pecuniary injury to the plaintiff, there remains but one question, namely, whether the similarity between the plaintiff's corporate

title and that adopted by the defendant constitutes an infringement of the plaintiff's rights by the defendant.   Under the authorities, I think it does.   In the present state of the law, it is not necessary, upon the facts here disclosed, for the plaintiff to show any actual pecuniary injury.   The injury necessary to sustain the action is implied in the act of the defendant in wrongfully appropriating the name of the plaintiff.   And this rule applies to corporations and natural persons alike.   See Taendsticksfabriks Aktiebolagat Vulcan v. Myers, 139 N. Y. 364, 34 N. E. 904; Higgins Co. v. Higgins Soap Co., 144 N. Y. 462, 39 N. E. 490; North Cheshire Co. v. Manchester Brewing Co. [1899] App. Cas. 83.   Touching the right of one person or corporation to appropriate the name of another for business purposes, the courts of this country and of England are singularly unanimous.   They condemn, not the assumption of the identical name only, but any real simulation of the name which is calculated to deceive or confuse the common mind.   This is the rule, regardless of the motive of the offender.   Here the defendant took the plaintiff's corporate title, the "Roy Watch-Case Company," as an entirety, and adopted it as its own, after prefixing to it the name "Camm," so that, thus changed, it read "Camm-Roy Watch-Case Company."   A simulation more nearly approaching identity can scarcely be imagined.   It is too palpable an infringement of plaintiff's trade-name to escape the condemnation of the law, and is within the authority of controlling decisions on the subject of trade-marks and trade-names.   Higgins Co. v. Higgins Soap Co., supra.   The court there held that, although the name taken by the defendant was not identical with that of the plaintiff, yet, because of the danger of injury to the plaintiff from such similarity as existed between the two names, in connection with other facts disclosed, the defendant should be restrained from continuing to use its name.   It was also held that, in respect to corporate names, the same rule applies as to the names of firms or individuals.   The case of Celluloid Mfg. Co. v. Cellonite Mfg. Co., 32 Fed. 94–97, decided that the similarity of the respective names of the parties to the action called for an injunction restraining the defendant from using the name it had chosen.   In Stuart v. Stewart Co., 33 C. C. A. 480, 91 Fed. 243, the question was whether, the plaintiff having adopted "Stuart Dyspepsia Tablets" to designate his goods, the defendant could lawfully designate his article as "Dr. Stewart's Dyspepsia Tablets," and the court held that he could not.   In that case, as in this, the alteration made in the name taken by the defendant effected no substantial change in it.   In North Cheshire Co. v. Manchester Brewing Co., supra, the house of lords held that the name "Manchester Brewing Company," taken by the defendant, so closely resembled the name of "North Cheshire & Manchester Brewing Company," adopted by the plaintiff, as to entitle the plaintiff to an injunction restraining its use.   The lord chancellor said:

"When I see that in the name of the appellant company there is literally and positively the same name as that of the rival company, as I will call it, and that it is only prevented from being identical in name by having another name associated with it, I should think myself that the inevitable result would be that which appears to have happened, that any one who saw the two names together would arrive at the conclusion, without any doubt at all, that the two

companies, both with well-known names, both in the particular neighborhood with which we are dealing, had been amalgamated."

These authorities are decisive of the motion. It is argued for the defendant that since there are in the entire country 8 watch-case manufacturers and 200 jobbers only, and the business of the plaintiff is confined to the jobbers, no danger can arise from confusion of names. But it appears that there are 25,000 retail dealers in watch cases, and, although the plaintiff may now sell to jobbers exclusively, such changes in the method and cost of business during the next 35 years which remain of the plaintiff's corporate life may take place as shall bring the plaintiff into closer business relations with retailers. This is a matter entirely in its own hands. The injunction will be continued during the pendency of the suit, upon the plaintiff filing an undertaking to be approved by a justice of this court in the sum of ———— thousand dollars. The plaintiff may have $10 costs of the motion. Let the order be settled on notice, when the amount of the undertaking will be fixed.